UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-23443-CIV-GAYLES/OTAZO-REYES

MAURICIO CERPAS,

    *Pro Se* Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court upon Plaintiff Mauricio Cerpas' ("Claimant") Motion for Summary Judgment filed *pro se* (hereafter, "Claimant's Motion for Summary Judgment") [D.E. 25] and Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's ("Commissioner"), Motion for Summary Judgment with Supporting Memorandum of Law and Response to Plaintiff's Motion for Summary Judgment (hereafter, "Commissioner's Motion for Summary Judgment") [D.E. 26]. The administrative transcript (hereafter, "TR.") has been filed [D.E. 16].[1] For the reasons stated below, the undersigned respectfully recommends that Claimant's Motion for Summary Judgment be DENIED, the Commissioner's Motion for Summary Judgment be GRANTED, and the Commissioner's decision be AFFIRMED.

## PROCEDURAL HISTORY

Claimant filed an application for Disability Insurance Benefits ("DIB") on October 25, 2017, alleging a disability onset date of December 31, 2012. TR. 15. The application was denied initially and upon reconsideration. Id. Upon Claimant's written request, a hearing was held on

---

[1] The references hereafter (TR. __) are to the transcript pages rather than the court record pages.

September 10, 2019, before Administrative Law Judge Gracian A. Celaya ("ALJ Celaya"), at which Claimant testified and Vocational Expert Jeff Barrett ("VE Barrett") appeared. Id. at 26–58.[2]

On September 24, 2019, ALJ Celaya issued an Unfavorable Decision, finding the following:

(1) Claimant had last met the insured status requirements of the Social Security Act on December 31, 2015. Id. at 17.

(2) Claimant had not engaged in substantial gainful activity during the period from his alleged onset date of December 31, 2012, through his date last insured ("DLI") of December 31, 2015 (20 C.F.R. § 404.1571 et seq.). Id.

(3) Through the DLI, Claimant had the following medically determinable impairments: anxiety and alcohol abuse (20 C.F.R. § 404.1521 et seq.). Id. at 18.

(4) Through the DLI, Claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, Claimant did not have a severe impairment or combination of impairments (20 C.F.R. § 404.1521 et seq.). Id.[3]

(5) Claimant had not been under a disability, as defined in the Social Security Act, at any time from December 31, 2012, the alleged onset date, through December 31, 2015, the DLI (20 C.F.R. § 404.1520(c)). Id. at 21.

On June 19, 2020, the Appeals Council denied a request for review of ALJ Celaya's Unfavorable Decision. Id. at 1–6. On August 18, 2020, pursuant to 42 U.S.C. § 405(g), Claimant filed this *pro se* action seeking reversal of ALJ Celaya's final administrative decision [D.E. 1].

In support of his contention that ALJ Celaya's Unfavorable Decision should be reversed, Claimant argues that:

---

[2] VE Barrett did not testify at the hearing. TR. at 26–58.
[3] The Social Security Administration ("SSA") Listing of Impairments "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a) and 416.925(a).

2

    I.       The ALJ "dismissed, avoided, or overlooked" the opinions of Dr. Herbert Ginart, Psy.D. ("Dr. Ginart") "in their entirety when [they were] the only competent and substantial evidence" before the ALJ;

    II.     The ALJ failed to consider lay witness testimony concerning Claimant's ability to work;

    III.    The ALJ "erred in not providing retroactive application to the disability opinions of Dr. Ginart"; and

    IV.    The ALJ's decision was not supported by competent and substantial evidence, including Claimant's hearing testimony.

See Claimant's Motion for Summary Judgment [D.E. 25].

The undersigned is mindful that "[p]*ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Nevertheless, the undersigned finds no merit in any of Claimant's contentions. See Porter v. Duval Cnty. Sch. Bd., 406 F. App'x 460, 462 (11th Cir. 2010) ("While we construe *pro se* plaintiffs' pleadings liberally, courts may not act as *de facto* counsel or rewrite an otherwise deficient pleading in order to sustain an action.") (citations and quotations omitted).

## RELEVANT MEDICAL EVIDENCE[4]

**I.    Physical Health Providers**

    **A. Treating Sources**

        **1) Dr. Francisco Miranda, M.D. ("Dr. Miranda")**

On September 5, 2008, Claimant presented for an appointment with Dr. Miranda after a prior last visit on April 23, 2007. TR. at 242. Claimant reported experiencing pain in his left foot

---

[4] As noted by ALJ Celaya, Claimant failed to submit medical records corresponding to the relevant time period, namely, December 31, 2012, to December 31, 2015. See TR. at 19. However, ALJ Celaya considered record evidence outside the relevant time period, including medical records submitted by Claimant less than five business days before the scheduled hearing and additional records submitted after the hearing. Id. at 15. That medical evidence is summarized below.

plantar area after undergoing an acupuncture procedure several days prior. Id. Dr. Miranda noted that Claimant had: no known medical allergies; a family history of depression on his father's side; a medical history of lipid disorders, hypertriglyceridemia, irritable bowel syndrome, gastritis, and anxiety; a past surgical history of a cholecystectomy; and a social history of alcohol use. Id. Dr. Miranda further noted that Claimant was taking medication to treat his anxiety and was a recovering alcoholic. Id. Claimant denied drug and tobacco use. Id. A review of systems revealed no abnormal findings, apart from Claimant's foot pain. Id.

Dr. Miranda further noted that Claimant was "a pleasant, 48 year old male in no apparent distress" who was well-developed and nourished, and showed good attention to his hygiene. Id. Dr. Miranda diagnosed Claimant with cellulitis and an abscess in his foot. Id. He ordered X-rays of Claimant's foot, prescribed Claimant an antibiotic and pain medication, and referred Claimant to a podiatrist. Id.

On July 19, 2010, Claimant presented for an appointment with Dr. Miranda. Id. at 243. Claimant reported experiencing heartburn and chronic back pain. Id. Claimant's anxiolytic dosage had been slightly increased, and he was still taking pain medication. Id. A review of systems revealed no abnormal findings, apart from Claimant's heartburn and back pain. Id. Dr. Miranda diagnosed Claimant with gastroesophageal reflux and neurosis. Id. He prescribed Claimant medication to help treat his heartburn. Id. at 244.

On June 6, 2011, Claimant presented for an appointment with Dr. Miranda. Id. at 245. Claimant reported that he had gone to the emergency room two months prior for numbness on his left side. Id. Claimant was still taking his anxiolytic medication. Id. A review of systems revealed no abnormal findings, apart from Claimant's concern about the numbness on his left side. Id. Dr. Miranda again noted that Claimant was in no apparent distress and exhibited good attention to his

4

hygiene.  Id.  He once more diagnosed Claimant with gastroesophageal reflux and neurosis.  Id.

### 2) West Kendall Baptist Hospital ("West Kendall")

On August 26, 2012, Claimant presented to the emergency room at West Kendall with anxiety and feeling "like [he] was going to have withdrawals".  Id. at 375.  The admission note indicated that Claimant had a past medical history of binge drinking and alcohol abuse, gastroesophageal reflux disease, and anxiety.  Id.  Claimant reported that he had drunk the prior afternoon, and that he had awakened feeling jittery, anxious, and with a sensation that he was going to go into withdrawal.  Id.  He also reported heart palpitations but denied chest pain.  Id.  Claimant stated that he had been binge drinking for three weeks.  Id.  He was admitted for potential alcohol withdrawal treatment and diagnostic testing.  Id.  At the time, Claimant was taking anxiolytic and gastroesophageal reflux medications.  Id.

A review of systems was unremarkable apart from confirming that Claimant was notably anxious, with slight tachycardia.  Id. at 376.  Claimant's complete blood count was also unremarkable.  Id.  However, Claimant's blood alcohol level was 100 mg%, and his liver enzymes were slightly elevated.  Id.

On August 27, 2012, Dr. Teresa Cardoso, M.D. ("Dr. Cardoso") wrote a discharge summary for Claimant.  Id. at 380.  She noted that Claimant's electrocardiogram had revealed that he had sinus tachycardia, and that a right upper quadrant sonogram had revealed that he had severe fatty infiltration of the liver.  Id.  Dr. Cardoso further noted that, during his hospitalization, Claimant had been diagnosed and treated for hypokalemia, alcohol abuse, tachycardia, transaminitis, and anxiety.  Id. at 380–81.  Claimant was discharged in stable condition, with no further complaints, and a recommendation that he maintain a low fat and low salt diet and that he follow up with Dr. Miranda and his psychiatrist in one week.  Id. at 381.

Dr. Cardoso also prescribed Claimant a course of vitamins and an additional anxiolytic medication, and referred him to a detox outpatient program. Id. at 381–82.

## II. Mental Health Providers

### A. Treating Sources

#### 1) Community Health of South Florida ("Community Health")

On January 11, 2018, Claimant presented for a psychiatric evaluation at Community Health with Dr. Joseph Nieves, M.D. ("Dr. Nieves"). Id. at 256. He asked Dr. Nieves "to figure out what [his] problem [was]." Id. Dr. Nieves noted that Claimant was 58 years old with a history of depression and anxiety. Id. Claimant stated that his "first episode" occurred in 1984 and that he was eventually prescribed Xanax. Id. However, Claimant reported that his symptoms interrupted his functioning and that he had not been able to work since 2011. Id. He reported continuous symptoms of depression, anxiety, and agoraphobia. Id. Claimant stated that he had witnessed his father's suicide when he was 12 years old and that his sister had passed away when he was a child. Id. He believed that he was experiencing the effects of posttraumatic stress disorder. Id. Claimant reported that he lived with his girlfriend and had served in the army from 1983 to 1991. Id. at 257. Claimant also stated that he consumed alcohol and reported previous withdrawal symptoms from his alcohol use. Id. He confirmed that he was not in any pain. Id.

Claimant claimed that he could not go out in public. Id. at 256. He reported the following symptoms of depression: depressed and irritable mood, anhedonia, feelings of guilt, hopelessness, decreased energy level, difficulty concentrating and maintaining focus on tasks, decreased appetite, and suicidal ideation. Id. He also reported the following symptoms of panic disorder: recurrent and unexpected panic attacks, palpitations, sweating, trembling or shaking, shortness of breath, the feeling of choking, dizziness, unsteadiness, lightheadedness, chills or heat sensations,

6

parethesias, and fear of losing control. Id. He further reported the following symptoms of anxiety: difficulty controlling his worry, restlessness, difficulty concentrating, and sleep disturbance. Id.

Dr. Nieves noted that Claimant periodically received outpatient and urgent care treatment in his native country of Nicaragua. Id. Claimant was also currently taking two anxiolytic medications. Id. Claimant reported that in addition to his father, his grandfather and aunt had also committed suicide, and that his children had attention deficit disorder and substance abuse issues. Id. He stated that he had been physically abused in the past by his mother. Id. at 257.

A mental status examination revealed that Claimant was casually dressed and displayed normal grooming and hygiene. Id. His eye contact was good, and he displayed no unusual psychomotor movements or changes. Id. Claimant's speech was coherent, his affect was in the normal range, and his mood was depressed. Id. His thought process was goal-directed and logical, and he denied suicidality, homicidality, delusions, phobias, obsessions/compulsions, and hallucinations. Id. at 258. He was oriented and alert, his long-term memory was intact, but his short-term memory appeared impaired. Id. Claimant's insight and judgment were fair. Id. Dr. Nieves diagnosed Claimant with major depressive disorder, agoraphobia with panic disorder, and generalized anxiety disorder. Id.

Claimant's strengths were that he was seeking treatment and had a supportive girlfriend and family. Id. His weaknesses were his chronic mental illness, poor compliance, and binge drinking. Id. Dr. Nieves prescribed Claimant a third anxiolytic medication and recommended that he return to the clinic in one month. Id. at 259.

### 2) Dr. Ginart

On August 10, 2018, Claimant presented for a neuropsychological evaluation with Dr. Ginart "for the purpose of determining whether or not [Claimant's] cognitive difficulties are the

result of a neurological disorder." Id. at 365. Claimant was evaluated due to his complaints of memory dysfunction. Id. He reported that he was currently separated from his wife, and that he had recently learned that his youngest daughter was abusing illegal substances. Id. Claimant also indicated that in the past, he had abused alcohol to cope with his stress, which impacted his ability to work as a doctor in psychology. Id. Claimant reported that he was currently seeking psychological care from Dr. Roberto A. Hernando, M.D. ("Dr. Hernando"), who had diagnosed him with major depressive disorder, panic disorder, and generalized anxiety disorder. Id.

Dr. Ginart noted that Claimant had a doctoral degree in psychology, but had remained unemployed since 2012 due to "his inability to cope with the rigors of practicing clinical psychology." Id. at 366. Claimant stated that he was granted disability benefits in 2018. Id. He indicated that he first began experiencing memory issues in the late 2000s, and that they were slowly progressive in nature. Id. He reported the following memory symptoms: markedly-reduced memory for recent events and conversations; impaired sustained attention/concentration; frequent misplacement of personal items and belongings; proneness to losing his train of thought; slow mental processing speed; verbal comprehension difficulties; word-finding difficulties; inadvertently repeating himself to others; occasional visual-spatial disorientation/confusion resulting from a high level of abstraction/internal distraction; and diminished problem solving capacity. Id. Claimant reported that he had not driven a car for three years out of concern that he would cause an accident. Id. He denied a history of brain injury, cerebrovascular events, and/or seizures. Id.

Claimant also reported that he had suffered from anxiety since childhood, beginning with his father's suicide. Id. This was exacerbated during his adolescence following the onset of civil war in Nicaragua. Id. He began to experience panic attacks in 1982 following the onset of marital

issues with his first wife, and his anxiety grew throughout the 1990s due to his son's behavioral problems. Id. at 367. Claimant reported that his second wife blamed him for their son's difficulties, thereby adding to his stress. Id. Claimant further reported that he decided to leave his second wife in 2008 after enduring emotional manipulation from her, but that he had since felt guilty about his decision. Id. Claimant stated that, when he began to abuse alcohol to cope, the quality of his care for his patients and his financial situation suffered. Id. Claimant indicated that the mortgage on his house was foreclosed in 2010, and that "for all intents and purposes, [he was] left homeless." Id.

Claimant stopped working in 2011 due to the severity of his condition, and in 2012, he was hospitalized with panic attacks and tachycardia. Id. Claimant reported that his inability to provide for his infant son caused him to feel depressed, helpless, and hopeless. Id. He indicated that he had not abused alcohol for several years and that he currently resided alone, relying on the help of his girlfriend and daughter to prepare his meals due to his poor cognitive function. Id.

Claimant reported the following psychiatric symptoms: severely depressed mood; marked anxiety; occasional panic attacks; growing social isolation/avoidance; engaging in obsessive thinking patterns that led to constant rumination; chronic insomnia; feeling lethargic/drowsy and confused/cognitively foggy during the day; lack of interest/motivation and energy; erratic/disorganized appetite; slow psychomotor speed; low self-esteem; very poor attention/concentration capacity; and frequent crying spells. Id. However, Claimant denied currently experiencing suicidal ideation or having ever attempted suicide. Id. Dr. Ginart noted that Claimant was taking two antidepressants, an anxiolytic medication, and a medication to treat attention deficit/hyperactivity disorder. Id. at 368.

Dr. Ginart further noted that Claimant presented with severely depressed mood and marked

anxiety. Id. He noted that Claimant was tense, slow, and distracted. Id. He lacked spontaneity and facial expression, was not focused, and was prone to losing his train of thought. Id. Dr. Ginart observed that Claimant was cognitively dull, tearful, helpless, and hopeless. Id. Dr. Ginart also noted that Claimant's constricted affect was fully consistent with somebody suffering from clinical depression and multiple anxiety disorders. Id. Claimant was fully oriented to time and place; his speech was sometimes slurred; and he had difficulty finding his words during the conversation. Id. Though he was disheveled, Claimant demonstrated adequate hygiene. Id. He occasionally struggled to understand and execute instructions during the testing session with Dr. Ginart, and he demonstrated moderate problem-solving difficulties. Id. Claimant was fully cooperative during the evaluation, his eye contact was within normal limits, and Dr. Ginart maintained an adequate level of rapport with him. Id. Dr. Ginart noted that Claimant put forth adequate cognitive effort during the testing session and that his testing profile did not suggest the presence of malingering or symptom exaggeration. Id. Dr. Ginart estimated that Claimant's current intellectual functioning placed him in the average range of functioning. Id. at 369.

Dr. Ginart administered several cognitive tests to Claimant. Id. Claimant demonstrated a "severely depressed, almost flat/stagnant verbal learning curve" for large words, and he failed to "establish and utilize effective organizational or grouping strategies designed to facilitate the learning of new material and its consequent recall." Id. His ability to recall only a handful of the words presented to him placed him in the severely impaired range of functioning. Id. Further, Claimant's ability to recall a target word list following exposure to distractor words placed him in the moderately impaired range of functioning. Id. Claimant's ability to recall the target list after a twenty-minute delay placed him in the severely limited range of functioning. Id. His ability to correctly recognize 67% of the words in a recognition task placed him in the moderately impaired

range of functioning. Id. Claimant scored in the moderately to severely impaired range of functioning on a series of logical memory tests, and his performance on a psychomotor functioning test was in the lower-end-of-average range. Id. at 369–70. Claimant's performance on a language functioning test was in the mildly-to-moderately impaired range, and his performance on a verbal fluency exam was in the high-end-of-average range. Id. at 370. His attention and concentration, along with his executive skills, were mildly to moderately impaired. Id. at 370–71. Claimant's visuospatial functioning and reasoning were in the average range of functioning. Id. at 371. Finally, Claimant's score on a malingering screen was 67%, "clearly indicating that [his] memory complaints and cognitive difficulties [were] valid and, thus, not exaggerated or fabricated." Id.

Dr. Ginart concluded that Claimant had considerable cognitive deficits that were much more pronounced than would be expected in an individual of average intellect who was suffering from depression, panic disorder, and anxiety, thereby supporting an inference that Claimant also suffered from attention deficit disorder (without hyperactivity) and obsessive-compulsive disorder. Id. at 372. Moreover, Dr. Ginart concluded that "there [was] no[] palpable evidence of neurological involvement despite the patient's poor cognitive performance." Id. Dr. Ginart recommended that Claimant continue to receive psychiatric help and treatment for his suspected attention deficit disorder. Id.

Dr. Ginart also noted that Claimant demonstrated: a marked restriction in his ability to complete his activities of daily living; marked difficulties in his ability to maintain an adequate level of social functioning; and marked difficulties in his ability to maintain an adequate level of attention/concentration, persistence, and pace as would be required in a place of employment. Id. at 372–73. Finally, Dr. Ginart concluded that Claimant was "basically unemployable at this point in his life." Id. at 373.

### B. Non-treating Sources

#### 1) Psychological Consultants Dr. Brian McIntyre, Ph.D. ("Dr. McIntyre") and Dr. David Clay, Ph.D. ("Dr. Clay")

On May 24, 2018, Dr. McIntyre informed Claimant that, with respect to his initial DIB application, Dr. McIntyre was "unable to obtain sufficient evidence to show that [Claimant's] condition was disabling as of 12/31/2015, the date [he] last met Social Security insured status requirements." Id. at 82. Likewise, on August 7, 2018, Dr. Clay opined that "[t]here [was] insufficient evidence to substantiate the presence of [a] disorder" and that "[n]ot enough evidence [was] provided to substantiate [a disability] determination" for the relevant time period. Id. at 90.

## HEARING TESTIMONY

A hearing was held on September 10, 2019, before ALJ Celaya, at which Claimant testified. Id. at 26–58.

### I. Claimant

Claimant testified that he was nearly 60 years old, 5'10" tall, and 166 pounds. Id. at 41. He stated that: he lived in a trailer home by himself; his girlfriend drove him to the hearing that day; and he was currently not working. Id. at 42. He stated that he received $774.00 per month in Social Security income and an additional sum in food stamps. Id. He testified that he did not have any other sources of income. Id. Claimant confirmed that he had a Ph.D. Id.

Claimant testified that he received mental health care between December 2012 and December 2015 from several doctors but that he was unable to acquire records of this treatment for purposes of his DIB application. Id. at 43. Claimant further testified that he used to work as a mental health and addiction therapist for children and families. Id. at 44.

With respect to the lack of treatment records for the relevant time period, Claimant testified that he attempted to meet with one of his doctors personally to obtain records from him, but that

his doctor was unable to help him. Id. at 46. Claimant further testified that his inability to concentrate, make work-related decisions and diagnoses, and drive prevented him from working between 2012 and 2015. Id. Claimant testified that in addition to taking his anxiolytic medication, he self-medicated with alcohol during this time. Id. at 47. Claimant stated that during the relevant time period, he was a wreck and did not want to get out of bed in the morning. Id. Claimant also indicated that he had recently suffered an injury and was currently litigating the accident. Id.

Claimant stated that his marital troubles, the loss of his home, and the loss of his job were all factors that contributed to his inability to work during the relevant time period. Id. at 48. He clarified that he chose to leave his job voluntarily because he could no longer perform. Id. Claimant testified that he had been unable to find new employment because he had been sick and in denial about his struggles. Id. at 49. Claimant testified that, during this time, he did not have insurance, resources, or money, and that his daughter had helped to support him. Id.

Claimant further indicated that apart from his issues with concentrating and making decisions at work, he had struggled to make a simple meal and kept forgetting things. Id. at 54. He testified that he visited Dr. Ginart to address his memory issues in the hopes that he could heal and return to leading a constructive life. Id. Claimant testified that though he felt better, he was still frustrated by his inability to focus on tasks such as reading. Id.

## STANDARD OF REVIEW

A federal court's "review of a social security case is demarcated by a deferential reconsideration of the findings of fact and exacting examination of the conclusions of law." Williams v. Astrue, 416 F. App'x 861, 862 (11th Cir. 2011). Thus,

> [t]he Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as

>adequate to support the conclusion. Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

Kieser v. Barnhart, 222 F. Supp. 2d 1298, 1305 (M.D. Fla. 2002) (citations omitted).  However, the Commissioner's "conclusions of law, including applicable review standards, are not presumed valid." Williams, 416 F. App'x at 862.

### **REGULATORY FRAMEWORK:  THE FIVE-STEP SEQUENTIAL PROCESS**

The Social Security Regulations outline a five-step "sequential" evaluation process used to determine whether a claimant is disabled.

First, the ALJ must determine whether a claimant is engaged in "substantial gainful activity" (hereafter, "SGA").  If the ALJ finds that the claimant is engaging in SGA, then the ALJ must find that the claimant is not disabled.  Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  In this case, ALJ Celaya determined that Claimant had not engaged in SGA during the period from his alleged onset date of December 31, 2012, through his DLI of December 31, 2015.  TR. 17.

At the second step, the ALJ must determine if a claimant's impairments are "medically severe."  If the ALJ determines that the claimant's impairments are medically severe, then he or she must proceed to the third step.  Phillips, 357 F.3d at 1237.  In this case, ALJ Celaya found that through the DLI, Claimant suffered from the following medically determinable impairments: anxiety and alcohol abuse.  TR. 18.  However, ALJ Celaya determined that through the DLI, Claimant did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months; therefore, Claimant had not had a severe impairment or combination of impairments.  Id.

As a result, ALJ Celaya did not proceed to steps 3 through 5, and concluded that Claimant

was not under a disability, as defined in the Social Security Act, at any time from December 31, 2012, the alleged onset date, through December 31, 2015, the DLI. Id. at 21.[5]

## DISCUSSION

As noted above, Claimant argues that:

I. The ALJ "dismissed, avoided, or overlooked" the opinions of Dr. Ginart "in their entirety when [they were] the only competent and substantial evidence" before the ALJ;

II. The ALJ failed to consider lay witness testimony concerning Claimant's ability to work;

III. The ALJ "erred in not providing retroactive application to the disability opinions of Dr. Ginart"; and

IV. The ALJ's decision was not supported by competent and substantial evidence, including Claimant's hearing testimony.

See Claimant's Motion for Summary Judgment [D.E. 25]. The undersigned finds no merit in any of these contentions.

**I. Whether ALJ Celaya "dismissed, avoided, or overlooked" the opinions of Dr. Ginart "in their entirety when [they were] the only competent and substantial evidence" before him.**

Claimant argues that ALJ Celaya "dismissed, avoided, or overlooked" Dr. Ginart's August 10, 2018, report, which he claims conclusively establishes that he was disabled during the relevant time period. See Claimant's Motion for Summary Judgment [D.E. 25 at 2]. Specifically, Claimant

---

[5] If ALJ Celaya had determined at the second step that Claimant had medically severe impairments, he would have proceeded to step three. At step three, the ALJ must determine if a claimant's impairment(s) "meet or equal" any of the listed impairments in the regulations. Phillips, 357 F.3d at 1238. If so, the ALJ must find the claimant disabled; if not, then the ALJ should proceed to step four. Id. Step four is a two-pronged process, which first requires the determination of a claimant's residual functional capacity ("RFC") and then, based on that RFC, a determination of whether the claimant can return to any "past relevant work." Id. If the claimant cannot perform any past relevant work, step five requires the ALJ to show that the claimant has the ability to perform work that is available in significant numbers in the national economy, considering his RFC, age, education, and work experience in order to find the claimant not disabled. Id. at 1239–40.

asserts that Dr. Ginart's summary of Claimant's relevant history and poor cognitive function is "of the utmost importance because no medical records exist[] reflecting medical treatment provided to [Claimant] *during the relevant period*." Id. (emphasis added).

ALJ Celaya found that Dr. Ginart's August 10, 2018, medical opinions about Claimant's memory and concentration were unpersuasive, in part, because they were rendered almost three years after the DLI and were based on Claimant's then "*current* symptoms and functioning." See TR. at 20 (emphasis in original). Claimant "cites to no law that an ALJ must give weight to opinions that fall outside of the relevant time period." See Manes v. Comm'r of Soc. Sec., No: 8:16-cv-3234-T-36JBT, 2018 WL 1832330, at *7 (M.D. Fla. Mar. 28, 2018) (citing Stevens v. Berryhill, No. 8:16-cv-3183-T-27AEP, 2018 WL 1135384, at *6 (M.D. Fla. Feb. 12, 2018)). Thus, because Dr. Ginart's report was rendered beyond the DLI, ALJ Celaya was not required to consider it in any greater detail. See Manes, 2018 WL 1832330, at *7.

**II.    Whether ALJ Celaya failed to consider lay witness testimony concerning Claimant's ability to work.**

Next, Claimant argues that ALJ Celaya failed to consider lay witness testimony concerning his ability to work. See Claimant's Motion for Summary Judgment [D.E. 25 at 4]. However, Claimant fails to identify what lay witness testimony the ALJ failed to consider. To the extent Claimant refers to his own hearing testimony, ALJ Celaya did consider such testimony in concluding that Claimant "did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities." See TR. at 18.

When "the record shows that the claimant has a medically-determinable impairment that could reasonably be expected to produce [his] symptoms, the ALJ must evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." Elwell v. Comm'r of Soc. Sec., No. 6:19-cv-2277-Orl-22EJK, 2021 WL 616319, at *5 (M.D. Fla.

16

Feb. 2, 2021), report and recommendation adopted, 2021 WL 616057 (M.D. Fla. Feb. 17, 2021) (alteration in original) (internal quotation marks and citation omitted). An ALJ does so by "examin[ing] the claimant's statements regarding [his] symptoms in relation to all other evidence and consider[ing] whether there are any inconsistencies or conflicts between those statements and the record." Id. (citation omitted).

ALJ Celaya acknowledged that, at the hearing, Claimant testified that he: visited numerous doctors during the relevant time period; stopped working in 2010 because of memory problems and an inability to concentrate; and personally contacted his doctors for records. See TR. at 19. However, ALJ Celaya also noted that: not a single record from Claimant's doctor visits during the relevant time period were produced; earning records showed that Claimant worked at above the applicable SGA level in both 2011 and 2012; and, when contacted for records, Claimant's doctors advised that none were available. Id. Moreover, ALJ Celaya found that, at the hearing, Claimant "demonstrated no difficulties with memory, concentration or cognitive functioning", as evidenced by his ability to provide specific details about his past work and interject while his representative was responding to a question. Id. As a result, ALJ Celaya concluded that Claimant's "medically determinable impairments could have been reasonably expected to produce the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record". Id.

Thus, ALJ Celaya properly considered Claimant's hearing testimony in concluding that Claimant's impairments "did not significantly limit his ability to perform basic work activities during the relevant time-period." Id. at 20.

### III. Whether ALJ Celaya "erred in not providing retroactive application to the disability opinions of Dr. Ginart".

Claimant further argues that ALJ Celaya erred by not retroactively applying Dr. Ginart's opinions to the relevant time period, as "the only logical conclusion is that [Claimant] became disabled as of December 31, 2012, which was immediately preceded by" homelessness, a hospitalization, and other issues.  See Claimant's Motion for Summary Judgment [D.E. 25 at 5].  However, Claimant "provides no evidence to support the conclusion that" Dr. Ginart's report, rendered on August 10, 2018, "relate[s] back to the time frame at issue", namely, December 31, 2012, to December 31, 2015.  See Collins v. Kijakazi, No. 8:21-cv-123-AAS, 2022 WL 1963638, at *4 (M.D. Fla. June 6, 2022) (quoting Capell v. Saul, No. 8:19-cv-2474-TPB-AAS, 2020 WL 5868165, at *3 (M.D. Fla. Sept. 9, 2020)).  Therefore, ALJ Celaya did not err by not retroactively applying Dr. Ginart's opinions to the relevant time period.

### IV. Whether ALJ Celaya's decision was not supported by competent and substantial evidence, including Claimant's hearing testimony.

Finally, Claimant argues that "what [he] expressed during the hearing, and to the medical providers, demonstrated not only a logical sequence of events leading up to his unemployment but also a medical history fully consistent with his testimony—even without medical evidence 'during' the relevant period."  See Claimant's Motion for Summary Judgment [D.E. 25 at 6].  Claimant essentially argues that ALJ Celaya's decision was not supported by competent and substantial evidence.  Id.  However, a review of the record shows that ALJ Celaya did consider the record evidence proffered by Claimant, despite none of it pertaining to the relevant time period, including Claimant's treatment records from Dr. Miranda, West Kendall, and Community Health.  See TR. at 19–20.  After assessing this evidence, ALJ Celaya concluded that, through the DLI, Claimant "had no limitation in understanding, remembering or applying information; interacting with others;

concentrating, persisting, and maintaining pace; and adapting or managing oneself." Id. at 20. Indeed, ALJ Celaya found that "[b]ecause [Claimant's] anxiety and alcohol abuse caused no more than 'mild' limitation in any of the functional areas, they were non-severe impairments through the DLI." Id.

ALJ Celaya also considered Dr. Ginart's opinions and, as indicated above, found them to be unpersuasive because they were based on Claimant's symptoms and functioning nearly three years after the DLI. Id. ALJ Celaya further considered the consultative opinions of Dr. McIntyre and Dr. Clay, which bolstered his conclusion that "there was insufficient evidence through the DLI to evaluate [Claimant's] claim." Id. Finally, as set forth above, ALJ Celaya properly considered Claimant's hearing testimony before concluding that Claimant's impairments "did not significantly limit his ability to perform basic work activities during the relevant time-period." Id.

In conclusion, ALJ Celaya engaged in an analysis "with enough detail to satisfy a reviewing court that he gave all of the relevant evidence before him its due regard" and premised his decision on the substantial evidence. Turner ex rel. Turner v. Barnhart, 377 F. Supp. 2d 1165, 1168 (M.D. Ala. 2005). "Where the Commissioner's decision is supported by substantial evidence, the district court will affirm." Kieser, 222 F. Supp. 2d at 1305.

## RECOMMENDATION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Claimant's Motion for Summary Judgment [D.E. 25] be DENIED, the Commissioner's Motion for Summary Judgment [D.E. 26] be GRANTED, and the Commissioner's decision be AFFIRMED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin

19

P. Gayles, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 16th day of June, 2022.

ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

Copies furnished via CM/ECF to:

United States District Judge Darrin P. Gayles
Counsel of Record

Copies furnished by mail to:

Mauricio Cerpas
10985 S.W. 107th Street, #208
Miami, FL 33176